UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cr-80010-Rosenberg/Reinhart

UNITED STATES OF AMERICA

v.

JEFFREY ALAN HELMS, JR.,

                Defendant.
_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM

The United States of America ("Government") respectfully requests the Court sentence the Defendant to a guideline sentence of 188 months in prison, followed by 3 years of supervised release, and full restitution to the victims. This sentence is sufficient but not greater than necessary to address each of the factors set forth in 18 U.S.C. § 3553(a).

The Defendant requests that the Court consider a downward variance for two reasons. First, the Defendant claims that one of his many prior convictions is not that violent, and therefore the Court should ignore his resulting classification as a career offender. (ECF 37, ¶ 3). Second, the Defendant claims that because he participated in drug programs, early release from prison followed by supervised release "will provide an overall approach to [the] Defendant's long-standing drug issues that will help avoid relapse and recidivism." (ECF 37, ¶ 3). Both these claims are meritless.

First, the Defendant attempts to downplay the dangerous situation he caused by taking a swing at an officer and kicking his hand during his arrest, reducing it to merely "an unsuccessful attempt to strike the deputy's chest, and a kick to the deputy's hand." (ECF 37, ¶ 3). In that case, law enforcement conducted a traffic stop on a vehicle in which the Defendant was a passenger in

1

order to take the Defendant into custody for an active warrant. (ECF 44, ¶ 64). Traffic stops are inherently dangerous, especially when executing an arrest warrant on a career criminal like the Defendant. By violently resisting arrest, the Defendant put multiple people in danger, including himself, law enforcement and the driver of the vehicle. As will be explained in further detail below, this was only one of many instances of increasingly violent conduct that the Defendant has been charged with for the past 20 years. As will be explained below, the Defendant has rightfully earned his status as a career criminal, and he should be sentenced accordingly.

Second, the Defendant has proven over the past twenty years that drug treatment and supervised release have absolutely no effect on his continued and escalating violent behavior. Therefore, this claim is not a basis for departure.

## Summary of Facts

The Defendant pled guilty to two counts of Hobbs Act Robbery which involved an armed robbery spree he committed in two different cities over the course of several days. (PSR ¶ 1-10). During the first armed robbery on January 12, 2025, the Defendant pointed what appeared to be a black firearm at a Walgreens cashier in Greenacres, Florida. (PSR ¶ 5). The victim was visibly distraught, crying and had tears running down her face. (PSR ¶ 5). The Defendant put her in immense fear for her life. (PSR ¶ 5).

During the second armed robbery on January 16, 2025, the Defendant pointed what appeared to be a black handgun at 2 different employees of a Taco Bell in Boynton Beach, Florida. (PSR ¶ 8). One of the victims was a child. (PSR ¶ 8). While most people go their entire life without having a gun pointed at them, these young victims, all of whom were probably making close to minimum wage, will likely never forget what the Defendant did.

Shortly after the second armed robbery, the Defendant fled and hid in a nearby motel. (PSR ¶ 8, 11). The Defendant then gave a false name to law enforcement and denied any knowledge of the crime – both of which were lies. (PSR ¶ 11). The Defendant also hid the weapon he used in both robberies inside a mattress in the motel, and only later informed law enforcement of its whereabouts after his arrest and after he knew it would benefit his case by casting doubt on whether he used an actual firearm during the robberies. (PSR ¶ 16). And while the Defendant's flight, lies to law enforcement, and attempt to conceal evidence may not have amounted to an adjustment under the guidelines, the Court can and should take this into consideration for sentencing.

## Argument

1. <u>Nature/Circumstances of Offense and History/Characteristics of Defendant (§ 3553(a)(1))</u>

The "nature and circumstances of the offense" component largely overlaps with the next listed consideration (seriousness of offense), and for that reason the Government will address that component in the next section. The history and characteristics of the Defendant can be summarized as a career criminal who was previously convicted of virtually the same crime as the charges he faces again here.

The Defendant's criminal history is long, diverse, and progressively violent. (PSR ¶ 50-88). Starting with Grand Theft Auto in 2003, the Defendant was sentenced to 18 months of probation and violated 3 separate times within the first year. (PSR ¶ 50). The Defendant served 30 days in jail and then another 6 months in jail on two of these violations, proving in this one case alone that neither probation nor small periods of incarceration have any effect on his behavior. (PSR ¶ 50).

On May 1, 2007, he committed Petit Theft, and then on August 6, 2008, he committed

Dealing in Stolen Property, False Verification to a Pawn Broker, and Grand Theft. (PSR ¶ 54). He was sentenced to 160 days in jail, proving again that longer periods of incarceration have no effect on his behavior. (PSR ¶ 54).

On December 4, 2009, he committed Grand Theft from a Dwelling and Dealing in Stolen Property. (PSR ¶ 55). He was sentenced to 366 days in jail, proving that even substantial, felony-level periods of incarceration have no effect on his behavior. (PSR ¶ 55). He also committed additional counts of Grand Theft and Uttering in Forged Checks that same day and received a concurrent jail sentence. (PSR ¶ 56).

Within months of being released from the sentence above, the Defendant continued to commit the same, exact crimes over and over again. (PSR ¶ 57-62). He was sentenced to a total concurrent sentence of 806 days in jail for these crimes, proving that even multi-year jail sentences have no effect on the Defendant's behavior. (PSR ¶ 57-62).

In 2011, the Defendant's crimes began to change for the worse. His theft-related crimes became more intrusive and violent, and he started committing crimes against law enforcement. In November of 2011, he committed Resisting Without Violence and served 34 days in jail. (PSR ¶ 63). On March 4, 2014, the Defendant committed Battery on a Law Enforcement Officer and Resisting an Officer with Violence. (PSR ¶ 64). In that case, law enforcement conducted a traffic stop on a vehicle in which the Defendant was a passenger to take the Defendant into custody for an active warrant. (PSR ¶ 64). The Defendant took a swing at the officer and kicked the officer in the hand during the arrest. (PSR ¶ 64). The Defendant was sentenced to 5 years in prison for this offense as well as others, proving again that multi-year prison sentences have no impact on the Defendant's recidivism. (PSR ¶ 64-68).

The Defendant's violent behavior continued while in prison, where he received disciplinary violations for aggravated assault on an inmate and disorderly conduct. (PSR ¶ 64).

In 2014, shortly after being released from prison, the Defendant burglarized a family's home while the victim was picking up her children from school. (PSR ¶ 66). The Defendant stole items meant for the children, such as games and food. (PSR ¶ 66).

In another 2014 residential burglary, the Defendant stole the victims' passports, savings bonds, credit cards and jewelry, valued over $45,000 while they were out of town. (PSR ¶ 67).

In another 2014 residential burglary, the Defendant finally received a consecutive sentence that extended his 5-year sentence for the cases above to a total of 9 years. (PSR ¶ 68). Even after nearly a decade in prison, the Defendant's criminal behavior picked up right where it left off once he was released.

In 2016, the Defendant committed Robbery with a Deadly Weapon, under nearly identical circumstances as the crimes here. (PSR ¶ 69). He was found guilty at trial and sentenced to life in prison, but the appellate court remanded the case and he pled to a lesser charge for 10 years with credit for time served. (PSR ¶ 69). He was released from prison on August 6, 2024. (PSR ¶ 69). Within only 5 months later, he committed the robberies in this case.

2. Seriousness of the Offense, Respect for the Law, and Just Punishment (§ 3553(a)(2)(A))

"Because punishment should fit the crime, the more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). "The seriousness of a crime varies directly with the harm it causes or threatens." *Id.* Thus, "the greater the harm the more serious the crime, and the longer the sentence should be[.]" *Id.*

Here, the Defendant placed 3 innocent people in fear for their lives by threatening them with a gun.  "Just punishment" under 18 U.S.C. § 3553(a)(2)(A), would include making these victims whole.  These victims, like so many of his past victims, will likely be impacted by the Defendant's crimes for the rest of their lives. The Defendant's punishment should reflect this.

3. Deterrence (§ 3553(a)(2)(B))

Here, the Defendant has repeatedly demonstrated over the past 20 years that small to moderate amounts of incarceration have no meaningful deterrent effect on the Defendant's behavior.  The Defendant is a 26-time convicted felon, whose crimes continue to get worse.  Thus, a substantial prison sentence is warranted here for both specific and general deterrence.

4. Protecting the Public (§ 3553(a)(2)(C))

The dozens of victims that the Defendant has harmed over the past 20 years deserve a break. Likewise, potential future victims should be protected from the Defendant, who continues to commit crimes shortly after being released from prison.  This case in particular shows that the Defendant previously committed an almost identical crime in 2016.  All available evidence suggests that the Defendant will certainly continue to commit these same types of crimes when given the opportunity.  Minimal incarceration and probation have proven to be ineffective on the Defendant.  Therefore, society deserves better protection from the magnitude of harm that the Defendant is capable of and likely to cause again.

## Conclusion

A downward variance is not appropriate in this case given the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and

protect the public from further crimes of the Defendant. *See* 18 U.S.C. § 3553(a)(1), (2). Accordingly, the United States respectfully requests the Court sentence the Defendant to the high end of the guidelines range of 188 months in prison and deny Defendant's request for a downward variance.

                                                Respectfully submitted,

                                                JASON A. REDING QUIÑONES
                                                UNITED STATES ATTORNEY

                              By:    *s/ Justin Chapman*
                                     Justin Chapman
                                     Assistant United States Attorney
                                     FL Bar No. 85778
                                     Justin.chapman4@usdoj.gov

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on October 23, 2025, I filed the foregoing document with the Clerk of the Court using CM/ECF and sent a copy of the document and its attachments via USAfx to **Robert Adler**, attorney for Defendant.

                                                *s/ Justin Chapman*
                                                Justin Chapman
                                                Assistant United States Attorney